RECEIVED & FILED

2015 DEC -2  PM 5:52

CLERK'S OFFICE
U.S. DISTRICT COURT
SAN JUAN, P.R.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>**v.**<br><br>**[1] Anaudi Hernandez Perez,**<br>*Counts: 1-9, 10, 12, 14, 16, 18, 24 & 25,*<br>**[2] Sally Lopez Martinez,**<br>*Counts: 1, 2, 3-5 & 11,*<br>**[3] Sonia M. Barreto Colon,**<br>*Counts: 1, 6, 7-9 & 15,*<br>**[4] Ivonne M. Falcon Nieves,**<br>*Counts: 1, 6, 7-9, 13 & 17,*<br>**[5] Javier A. Muniz Alvarez,**<br>*Counts: 1, 18 & 23,*<br>**[6] Carlos F. Luna Cruz,**<br>*Counts: 19, 20, 21, 22 & 23,*<br>**[7] Xavier Gonzalez Calderon,**<br>*Counts: 24 & 25,*<br>**[8] Victor R. Burgos Cotto,**<br>*Counts: 24 &25,*<br>**[9] Marielis Falcon Nieves,**<br>*Count:  17,*<br>**[10] Glenn O. Rivera Pizarro,**<br>*Counts: 24 & 25,*<br>Defendants. | **INDICTMENT**<br><br>CRIMINAL NO.: 15--739 PAD<br><br>**VIOLATIONS:**<br>18 U.S.C. § 2<br>18 U.S.C. § 371<br>18 U.S.C. § 666<br>18 U.S.C. § 1343, 1346, 1349<br>18 U.S.C. § 1512<br>18 U.S.C. § 1623<br>18 U.S.C. § 1951<br>18 U.S.C. § 1956<br>**FORFEITURE:**<br>18 U.S.C. § 981<br>28 U.S.C. § 2461<br><br>(25 Counts) |

## INDICTMENT

THE GRAND JURY CHARGES THAT:

## COUNT ONE

### 18 U.S.C. § 371
**(Conspiracy to Commit Federal Programs Fraud and Wire Fraud)**

1.      Unless otherwise specified, at all times material to this Indictment:

2. Defendant **Anaudi Hernandez Perez** was a businessman who lived in the Commonwealth of Puerto Rico. **Hernandez Perez**, although not named in official corporate records, exercised *de facto* control over numerous companies doing business with agencies and public corporations of the Commonwealth of Puerto Rico, including the **Hernandez Companies** set forth in more detail below.

3. Defendant **Sally Lopez Martinez** was the Administrator of the Commonwealth of Puerto Rico's "Administracion de Desarrollo Laboral" (Workforce Development Administration) (hereinafter "ADL").

4. Defendant **Sonia M. Barreto Colon** was the Purchasing Director of the Commonwealth of Puerto Rico's "Autoridad de Acueductos y Alcantarillados" (Puerto Rico Aqueduct and Sewer Authority) (hereinafter "AAA").

5. Defendant **Ivonne M. Falcon Nieves** was the Vice President of AAA. Prior to her position as Vice President, **Ivonne M. Falcon Nieves** served as Treasurer of AAA.

6. Defendant **Javier A. Muniz Alvarez** was a businessman who lived in the Commonwealth of Puerto Rico.

7. Person A was the Governor of the Commonwealth of Puerto Rico. He was sworn in as Governor on January 2, 2013.

8. Person B was the brother of Person A. Person B was a private citizen.

9. Person C was a relative of **Anaudi Hernandez Perez**.

2

10.     Person D was the Executive President of AAA.

**Hernandez Companies**

11.     In order to obtain government contracts and receive funds from the contracts, **Anaudi Hernandez Perez** exercised *de facto* control over the following companies and corporations throughout the relevant time period:

i. 3 Comm Global, Inc. was a for profit corporation incorporated under the laws of Puerto Rico on November 9, 2012. **Anaudi Hernandez Perez** and co-conspirators (not indicted herein) utilized 3 Comm Global. Inc. to secure government contracts.

ii. Links Group, LLC was a for profit limited liability company, formed under the laws of Puerto Rico on January 29, 2013. **Anaudi Hernandez Perez** and co-conspirators (not indicted herein) utilized Links Group, LLC to secure government contracts.

iii. Kendall Consulting Group, Inc. was a for profit corporation incorporated under the laws of Puerto Rico on January 18, 2013 by Person C. **Anaudi Hernandez Perez** utilized Kendall Consulting Group, Inc. to receive payments from government contracts.

iv. JM Profesional [sic] & Training Group, Inc. was a for profit corporation incorporated under the laws of Puerto Rico on April 8, 2010. Defendants

3

**Anaudi Hernandez Perez** and **Javier A. Muniz Alvarez** utilized JM Profesional & Training Group, Inc. to secure government contracts.

v. Waffler Avenue, LLC was a for profit limited liability company formed under the laws of Puerto Rico on July 9, 2012. Defendant **Anaudi Hernandez Perez** utilized Waffler Avenue, LLC to secure and receive payments from government contracts.

vi. EKO Technologies, LLC was a for profit limited liability company formed under the laws of Puerto Rico on July 8, 2013. **Anaudi Hernandez Perez** and co-conspirators (not indicted herein) utilized EKO Technologies, LLC to secure government contracts.

12. I A Mech Chem, Inc. was a for profit corporation incorporated under the laws of Puerto Rico on April 21, 2009. Defendant **Anaudi Hernandez Perez** was not related to this company but utilized his influence and contacts within AAA to secure payments due to I A Mech Chem, Inc.

13. AAA was a water company and the government-owned corporation of Puerto Rico responsible for water quality, water management, and water supply in Puerto Rico. AAA received federal assistance in excess of $10,000 during the one-year periods beginning in January of 2012, 2013, 2014 and 2015.

14. ADL was a government administration, under the umbrella of the Puerto Rico Department of Labor, in charge of coordinating strategies for occupational

4

development charged with strengthening the Puerto Rico workforce through job

placement assistance and other job training programs.  ADL, through the Department of

Labor, received federal assistance in excess of $10,000 during the one-year periods

beginning in January of 2013 and 2014.

## THE CONSPIRACY AND ITS OBJECTS AND SCHEMES

15.     From in or about 2012 through in or about the return of the instant

Indictment, in the District of Puerto Rico and elsewhere, the defendants,

**[1] Anaudi Hernandez Perez,**
**[2] Sally Lopez Martinez,**
**[3] Sonia M. Barreto Colon,**
**[4] Ivonne M. Falcon Nieves,**
**[5] Javier A. Muniz Alvarez,**

did knowingly combine, conspire, confederate, and agree with each other and others

known and unknown to the Grand Jury to commit offenses against the United States, to

wit:

a.  to devise and intend to devise a scheme and artifice to defraud and

deprive the United States and the citizens of Puerto Rico of the honest services from

public officials **Sally Lopez Martinez, Sonia M. Barreto Colon** and **Ivonne M. Falcon**

**Nieves**, in violation of 18 U.S.C. §§ 1343 and 1346;

b.  to corruptly give, offer, and agree to give anything of value to public

officials, **Sally Lopez Martinez,** an agent of ADL, **Sonia M. Barreto Colon** and **Ivonne**

**M. Falcon Nieves**, both agents of AAA, said entities having received federal assistance

5

in excess of $10,000 in a one-year period, with the intent of influencing and rewarding

them, in connection with any business, transaction, and series of transactions of ADL and

AAA, involving anything of value of $5,000 or more, that is recommendations for

appointments and employment, dinners, gifts, entertainment and other things of value by

and from **Anaudi Hernandez Perez**, in exchange for in obtaining favorable treatment and

the awarding of  government contracts to the **Hernandez Companies** and other official

acts, in violation of 18 U.S.C. § 666(a)(2); and

        c.   for the aforementioned agents of ADL and AAA, which received federal

assistance in excess of $10,000 in a one-year period, to corruptly solicit and demand for

the benefit of any person, and to accept and agree to accept anything of value from any

person, intending to be influenced and rewarded in connection with any business,

transaction, and series of transactions of ADL and AAA, involving anything of value of

$5,000 or more, that is recommendations for appointments and employment, dinners,

gifts, payments and other things of value by and from **Anaudi Hernandez Perez**, in

exchange for obtaining favorable treatment and the awarding of government contracts to

the **Hernandez Companies** and other official acts, in violation of 18 U.S.C. §

666(a)(1)(B).

## PURPOSE OF THE CONSPIRACY

    16.     The purpose of the conspiracy was for the defendants to utilize the public

6

officials' positions within the government of the Commonwealth of Puerto Rico to benefit and enrich themselves through bribery.

## MANNER AND MEANS OF THE CONSPIRACY

### Anaudi Hernandez Perez's Relationship with Person A and B

17.    **Anaudi Hernandez Perez** utilized his personal friendship with Person B and substantial fundraising activities during the 2012 election cycle to position himself to successfully make recommendations on behalf of individuals seeking government appointments and employment after the election.

18.    **Anaudi Hernandez Perez**, and his co-conspirators (not indicted herein) raised campaign contributions for individuals running for public office in 2012, including those in mayoral, congressional and gubernatorial races by organizing fund raising events.

19.    **Anaudi Hernandez Perez** both solicited and received cash payments on behalf of campaigning individuals.

20.    **Anaudi Hernandez Perez** regularly provided email and other updates to members of his campaign finance committee, and others, regarding the results of the campaign fund raising efforts.  For example, on October 11, 2012 **Anaudi Hernandez Perez** sent an email, appearing below in a redacted format:

[Original version – (redacted)]

| | |
|---|---|
| **From:** | Anaudi Hernandez <************@gmail.com> |
| **To:** | [PERSON B] <***********@gmail.com> |
| **Sent:** | Thu Oct 11 2012 15:09:40 ADT |
| **Subject:** | Grupo |

---

[PERSON B], aqui te envio el listado de las personas que buscaron 5 o 6 personas que aporten $2,500 +

Necesito que tu o I******* los llamen ASAP y que le den las gracias por entrar a ayudarnos en este momento tan crucial y que el ultimo día para llevar el $ es el martes 16 de octubre de 2012 antes de las 5:00pm en el PPD.

Mencionarle de la actividad para ellos y su grupo entre el 20/21 de octubre.

NOMBRE. GARANTIZO
1- J********** B********* $20,000.00
787-***-****
2- A********* M*********. $15,000.00
787-***-****
3-Ing I******** T**********. $15,000.00
787-***-****

Tengo 2 mas de 15,000 para un total de $80,000 pero mas tarde te doy la info de quién va ser el principal!

Porfavor llamenlos ahora!

Sent from my iPhone

---

[English version – (redacted)]

| | |
|---|---|
| **From:** | Anaudi Hernandez <************@gmail.com> |
| **To:** | [PERSON B] <***********@gmail.com> |
| **Sent:** | Thu Oct 11 2012 15:09:40 ADT |
| **Subject:** | Group |

---

[PERSON B],sending you here the list of people that looked for 5 or 6 people to contribute $2,500+

Need for you or I******* to call them ASAP and thank them for coming in to help us at this crucial moment and that the last day to bring the $ is on Tuesday October 16, 2012 before 5:00pm at the PPD.

Mention to them the activity for them and their group between the 20/21 of October.

NAME. GUARANTIED
1- J********** B********* $20,000.00
787-***-****
2- A********* M*********. $15,000.00
787-***-****
3-Ing I******** T**********. $15,000.00
787-***-****

I have 2 more of 15,000 for a total of $80,000 but will give you the info later as to who the principal will be!

Please call them now!

Sent from my iPhone

8

21.     **Anaudi Hernandez Perez** hosted campaign fund raising events at his residence located in Aguadilla, Puerto Rico.  On occasion, Person A and Person B would stay at **Hernandez Perez's** residence.

### Manners to Obtain, Perform and Conceal Nature of Contracts

22.     Shortly after the general elections in November, 2012, **Anaudi Hernandez Perez** vacationed internationally with Person A and Person B.

23.     Beginning in or about late 2012, and continuing in or about early 2013, **Anaudi Hernandez Perez** and his co-conspirators (not indicted herein) formalized their plans to obtain government contracts with numerous governmental entities, including but not limited to: AAA, ADL, the House of Representatives, the Administration of General Services (known in Spanish as "Administración de Servicios Generales),  the Department of Health (known in Spanish as "Departamento de Salud"), the Public Corporation for the Supervision and Insurance of Credit Unions (known in Spanish as "Corporación Pública para la Supervisión y Seguros de Cooperativas de PR"),  Department of Corrections and Rehabilitation (known in Spanish as "Departamento de Correcciones y Rehabilitacion"), National Park Company of Puerto Rico (known in Spanish as "Compañía de Parques Nacionales de Puerto Rico"),  The Administration of Health Insurance (known in Spanish as "Administración de Seguros de Salud"), the Department of Transportation and Public Works (known in Spanish as "Departamento de Transportación y Obras Públicas"), Housing Department (known in Spanish as "Departamento de la Vivienda"), Department

9

of Education (known in Spanish as "Department of Education"), and the Sports and
Recreation Department (known in Spanish as "Departamento de Recreación y
Deportes").

24.     To discuss the plan, **Anaudi Hernandez Perez, Javier A. Muniz Alvarez**,
and co-conspirators (not indicted herein) held meetings to examine possible government
contract and proposal opportunities.  Minutes of a meeting that occurred on December
20, 2012 were memorialized and included, among others, the following topics of
discussion: proposals available to the partnership, other agencies to find proposals,
companies that can be created to obtain government contracts.

25.     Within this timeframe, **Anaudi Hernandez Perez** received numerous
emails and resumes from individuals seeking his assistance in obtaining positions within
the newly elected government.  **Hernandez Perez**, in turn, forwarded many of those
emails to government functionaries, and Person B.  Many of these individuals ultimately
received government employment.

26.     **Anaudi Hernandez Perez** also received and forwarded by email a list of
individuals employed in trust positions within a government corporation that he wanted
removed based on their political affiliation.  The email was dated January 9, 2013, and
was forwarded to, among others, Person B, and sent an email, appearing below in a
redacted format:

10

[Original message - (redacted)]
From:            [Anaudi Hernandez] <▇▇▇▇▇▇▇▇@gmail.com>
To:              [PERSON B]        <*************@gmail.com>
Cc:
Sent:            Wed Jan 09 2013 20:06:20 AST
Subject:         Fwd: empleados confianza PNP AAA
Attachments: (1)
☐ Confianza AAA as of January 9 2013(1).xlsx

-------------------------------------------------------------------------

Sent from my iPhone

Begin forwarded message:

> From:     I******* a****** H******** <************@rocketmail.com>
> Date:     January 9, 2013, 1:26:27 PM AST
> To:       [Anaudi Hernandez] *************@gmail.com"
> Subject:  empleados confianza PNP AAA
> Reply-To: I******* a****** H******** <************@rocketmail.com>
>
> te incluyo listado de todos los empleados PNP que aún siguen en sus puestos de confianza en la AAA
>
>

[English translation – (redacted)]

From:            [Anaudi Hernandez] <▇▇▇▇▇▇▇▇@gmail.com>
To:              [PERSON B]        <*************@gmail.com>
Cc:
Sent:            Wed Jan 09 2013 20:06:20 AST
Subject:         Fwd: empleados confianza PNP AAA
Attachments: (1)
☐ Trust AAA as of January 9 2013(1).xlsx

-------------------------------------------------------------------------

Sent from my iPhone

Begin forwarded message:

> From:     I******* a****** H******** <************@rocketmail.com>
> Date:     January 9, 2013, 1:26:27 PM AST
> To:       [Anaudi Hernandez] *************@gmail.com"
> Subject:  empleados confianza PNP AAA
> Reply-To: I******* a****** H******** <************@rocketmail.com>
>
> I include the list of all the PNP employees that are still in their positions of trust at the AAA
>
>

27.    **Anaudi Hernandez Perez** and his co-conspirators also set about to form and

make alliances with various corporations and limited liability companies that would be

used to obtain government contracts, proposals and purchase orders.  These included 3

11

Comm Global, Inc., Links Group, LLC, EKO Technologies, LLC, JM Profesional &

Training Group, Inc., and Waffler Avenue, LLC.

28.     **Anaudi Hernandez Perez** and his co-conspirators were careful to ensure

that Hernandez did not appear on any official documentation regarding the formation of

the corporations, or on any formal request for government contracts, proposals, or

purchase orders.  **Hernandez Perez**, however, was present in numerous meetings where

the proposals were discussed, was included in internal electronic and oral

communications regarding these matters, and received payment from the contracts into

corporate bank accounts and through unusual business transactions.

29.     **Anaudi Hernandez Perez** and his co-conspirators utilized their political

contacts and influence in order to recommend individuals to Person B, and others, for

trust positions within government agencies, departments and public corporations.  Many

of these individuals recommended by **Hernandez Perez** ultimately had the authority to

approve or authorize contracts, purchase orders, and other financial obligations on behalf

of their respective agencies, departments or public corporations, and in return for the

recommendations for employment, and/or other things of value, provided favorable

treatment, authorized contracts, purchase orders, proposals and payments on behalf of the

co-conspirators.

30.     **Anaudi Hernandez Perez** and his co-conspirators offered and gave, and

the public officials solicited and accepted from **Hernandez Perez** and his co-

12

conspirators, things of value, including expensive meals, personal gifts, expensive

fountain pens, purses, bags, concert tickets, and the payment of certain accrued debts to

individuals who were seeking, could influence the attainment of, or had critical

government positions.  The public officials routinely failed to report these things of value

as required on their respective ethics reports.

     31.    **Anaudi Hernandez Perez** made his influence within the Government

known through both words and actions.  For example, on or about May 4, 2013,

Hernandez celebrated his birthday at a concert in a private suite at the Puerto Rico

Coliseum.  The particular suite utilized that evening for **Hernandez Perez's** birthday

party was the suite permanently set aside for the Governor of Puerto Rico.  **Hernandez**

**Perez's** written invitation list included heads and high ranking members of government

agencies and public corporations, as well as elected officials.  The day prior to the

concert, **Hernandez Perez** sent an email message to an employee at the Governor's

mansion ("Fortaleza") selecting the food and beverage items he wanted for his guests the

following evening.  The email appears below in a redacted format:

[Original message - (redacted)]
From:       [Anaudi Hernandez]  <▨▨▨▨▨▨▨@gmail.com>
To:         [S***********]       <***************@fortaleza.pr.gov>
Cc:         [***********]        <***************@hotmail.com>
Sent:       Mon Apr 29 2013 14:45:13 ADT
Subject:
Attachments: (1)
☐ Suite Order Forn 2012-2013.xls (106 KB)
--------------------------------------------------------------------------------

S**********, saludos!  Te envio listado con la peticion de comida y bebida de la
actividad del 4 de mayo en el Coliseo de PR.
Gracias como siempre,
Anaudi Herdz.

[English translation – (redacted)]
From:       [Anaudi Hernandez]  <▨▨▨▨▨▨▨@gmail.com>
To:         [S***********]       <***************@fortaleza.pr.gov>
Cc:         [***********]        <***************@hotmail.com>
Sent:       Mon Apr 29 2013 14:45:13 ADT
Subject:
Attachments: (1)
☐ Suite Order Forn 2012-2013.xls (106 KB)
--------------------------------------------------------------------------------

S**********, greetings! I'm sending you the list with the request for food and beverage
for the May 4, activity at the Coliseum of PR.
Thanks as always,
Anaudi Herdz.

32.    **Anaudi Hernandez Perez** would often keep written records regarding the

purpose of his government related business meetings, and the things of value provided to

these individuals referenced above.

33.    **Anaudi Hernandez Perez** and his co-conspirators utilized their

government influence to receive an unfair competitive advantage over their competitors,

in that they:  a) received preferred opportunities on certain government "request for

proposals" ("RFPs"); b) received guidance from agency employees on the proper format

and content of proposals and bids for government contracts; c) had access to speak and

14

meet with critical employees in decision making positions within the agencies,

departments and government corporations; d) received guidance on how to structure bids

and proposals in order to avoid the formal auction process required by law; e) demanded

and were provided with explanations from agency employees when their proposals or

bids were not selected.

34.     Once awarded the government contracts, **Hernandez Perez** and his co-

conspirators would utilize, often without proper contractual authority, subcontractors who

would perform the work defined in the contracts.

35.     On many occasions, **Hernandez Perez** and his co-conspirators provided

substandard work on their contractual obligations in that they: a) failed to make the

required payments to suppliers, subcontractors and creditors; b) failed to abide by the

terms of the contract regarding performance results/follow up as required under the

contract; c) failed to competently provide the services they were contracted to perform.

36.     In order to conceal the true nature of the contractual relationship, **Anaudi**

**Hernandez Perez** and his co-conspirators would incorporate their businesses, enter

contractual obligations, and set up payment methods in order to conceal who or whom

realistically had a stake in the business venture.  This allowed the proposals and

contractual agreements to proceed through some levels of review and the approval

process without questions regarding their propriety.

37.     **Anaudi Hernandez Perez** and his co-conspirators would utilize their contacts and influence within at least one government dependency to secure, for a fee, the release of legitimate payments due to other corporations, which lacked the current connections within the government.

38.     **Anaudi Hernandez Perez** and his co-conspirators would enter into publicly undisclosed secret oral and written agreements regarding their responsibilities and profit sharing pursuant to their government earnings.

39.     **Anaudi Hernandez Perez** and his co-conspirators would secure "loans" and/or "gifts" from potential business associates or "friends/benefactors" in order to meet their personal and corporate financial obligations.

40.     **Anaudi Hernandez Perez** and his co-conspirators would utilize their relatives in order to form or reorganize corporations in order to receive, and make payments.

## OVERT ACTS IN FURTHERANCE OF THE CONSPIRACY

41.     In furtherance of the conspiracy, and to accomplish its purpose, the co-conspirators (both indicted and unindicted herein), committed the following overt acts in the District of Puerto Rico and elsewhere:

### ADL

42.     On December 27, 2012, **Sally Lopez Martinez** sent an email from her Gmail address to **Anaudi Hernandez Perez's** Gmail address.  The email had **Lopez Martinez's** resume as an attachment.

16

43.     On January 4, 2013, two days after Person A was sworn in as the Governor of Puerto Rico, **Anaudi Hernandez Perez** sent an email from his Gmail address to the Gmail address of Person B.  The email appears below in a redacted format:

---

[Original message - (redacted)]

| | |
|---|---|
| **From:** | Anaudi Hernandez <▬▬▬▬▬:@gmail.com> |
| **To:** | [PERSON B] <***********@gmail.com> |
| **Sent:** | Fri Jan 04 2013 08:06:42 AST |
| **Subject:** | Ayudame con estas personas |

--------------------------------------------------

1.Alcalde de A******** pide único nombramiento para :
******** ********* para la dependencia de Agricultura, tiene 26 años de experiensa y hace 12 años supervisa los programas agricola de la región
2- Juez amigo mio/AGP, lo hable con él y me dijo que enero le enviara el documento para extender su plaza por 6 meses:
******** ********* **********
DIRECCION: ***********, MOCA, PUERTO RICO, 00***
POSICION: JUEZ MUNICIPAL (ACTUALMENTE ASIGNADO A LA SALA MUNICIPAL DE AGUADILLA)
TELEFONO: (787) ***-**** ,(787)***-****
FECHA DE VENCIMIETO DEL ACTUAL TERMINO PARA EL CUAL FUE NOMBRADO ES EL 11 DE ENERO DE 2013.
3- Por favor llamate a V********* T********* para que entreviste a mi amiga/AGP para el Consejo de Desarollo Economico debajo del Dept del Trabajo. [********* V********* la entrevisto el Lunes:
Sally Lopez
AYUDAME CON ESTO!
Importante para mi!!
Adicional los nombramiento de los directores regionales!
Por favor si te avisan de algo ve dandome seguimiento!
Gracias
Un Abrazo!

Sent from my iPhone

---

[English translation – (redacted)]

| | |
|---|---|
| **From:** | Anaudi Hernandez <▬▬▬▬:@gmail.com> |
| **To:** | [PERSON B] <***********@gmail.com> |
| **Sent:** | Fri Jan 04 2013 08:06:42 AST |
| **Subject:** | Help me with these people |

--------------------------------------------------

1- Mayor of A******** asking only appointment for:
******** ********* for department of Agriculture, has 26 years of experience and has been supervising for 12 years the agriculture programs in the region.
2- Judge friend of mine/AGP, I spoke with him and he said to send him the document to extend his slot by 6 months:
******** ********* **********
ADDRESS: ***********, MOCA, PUERTO RICO, 00***
POSITION: MUNICIPAL JUDGE (CURRENTLY ASSIGNED TO THE AGUADILLA MUNICIPAL COURT)
TELEPHONE: (787) ***-**** ,(787)***-****
DUE DATE FOR THE CURRENT TERM FOR WHICH HE WAS APPOINTED IS JANUARY 11, 2013
3- Please call V********* T********* so that he interviews my friend/AGP for the Economic Development Council under the Dept of Labor. [******* V********* interviewed her on Monday:
Sally Lopez
HELP ME WITH THIS!
Important for me!!
Additionally the appointment of the regional directors!
Please if they tell you anything follow up with me!
Thanks
A Hug!

Sent from my iPhone

---

44.    On January 11, 2013, **Sally Lopez Martinez** was appointed by Person A as the Administrator of ADL.  **Lopez Martinez** was confirmed by the Senate on June 27, 2013.  As the Administrator of ADL, **Lopez Martinez** had the authority and discretion to sign contracts on behalf of ADL.

45.    Throughout 2013 and 2014, in addition to the recommendation for appointment, **Anaudi Hernandez Perez** provided **Sally Lopez Martinez** with things of value in exchange for **Lopez Martinez's** favorable consideration for the **Hernandez Companies** on matters with ADL.

46.    The things of value included but are not limited to: expensive meals, a Salvatore Ferragamo handbag, a Carolina Herrera handbag, concert tickets to the Puerto Rico Coliseum, and invitations to other social events.  **Hernandez Perez** kept written electronic records memorializing the things of value provided to an individual referred to as "Sally" or "Sa..".  The records indicate in pertinent part, "Contributions of Anaudi …, Tuesday with Sally Mortons 425, Sally Lunch $213, breakfast with Sally 4/5/13 $56, Sally book $642 mont, Sa..purse sept/14/2013 $1,734.00."

47.    Commencing in early 2013, and continuing through 2014, **Anaudi Hernandez Perez** and his co-conspirators, through the **Hernandez Companies**, garnered **Sally Lopez Martinez's** approval on numerous proposals and bids for contracts with ADL.  **Anaudi Hernandez Perez**, although involved in the securing of these contracts,

was purposefully not included on the official public documents executed between ADL and the **Hernandez Companies**. The details of the contracts are outlined below.

## LINKS GROUP, LLC

48.     On September 23, 2013, Links Group, LLC, through its representative, signed a contract with ADL for professional services to organize and conduct employment training.   The contract number was: 2014-000044. **Sally Lopez Martinez** signed the contract on behalf of ADL.  Pursuant to the terms of the contract, Links Group, LLC stood to collect as much as $300,000.00.

## 3 COMM GLOBAL, INC.

49.     On July 30, 2013, 3 Comm Global, Inc., through its representative, signed a contract with ADL for professional services.   The contract number was 2014-000025. **Sally Lopez Martinez** signed the contract on behalf of ADL.  Pursuant to the terms of the contract, 3 Comm Global, Inc. stood to collect as much as $86,720.00.

## JM PROFESIONAL & TRAINING GROUP, INC.

50.     On or about September 17, 2013, JM Profesional & Training Group, Inc., through its representative, signed a contract with ADL for professional services to organize and conduct job fairs throughout Puerto Rico.  The contract number was:  2014-000041. **Sally Lopez Martinez** signed the contract on behalf of ADL.  Pursuant to the terms of the contract, JM Profesional & Training Group, Inc. stood to collect as much as $200,000.00.

51.     On or about June 3, 2014, **Sally Lopez Martinez** and JM Profesional & Training Group, Inc. amended contract 2014-000041.  Pursuant to the amendment, JM Profesional & Training Group, Inc. stood to collect as much as $800,000.00.

52.     On or about October 17, 2013, JM Profesional & Training Group, Inc., through its representative, signed a contract with ADL for professional services to organize and conduct job fairs throughout Puerto Rico.   The contract number was:  2014-000048.  **Sally Lopez Martinez** signed the contract on behalf of ADL.  Pursuant to the terms of the contract, JM Profesional & Training Group, Inc. stood to collect as much as $300,000.00.

53.     On or about November 20, 2013, **Sally Lopez Martinez** and JM Profesional & Training Group, Inc. amended contract 2014-000048.  Pursuant to the amendment, JM Profesional & Training Group, Inc. stood to collect as much as $460,000.00.

54.     On or about February 26, 2014, **Sally Lopez Martinez** and JM Profesional & Training Group, Inc. amended contract 2014-000048.  Pursuant to the amendment, JM Profesional & Training Group, Inc. stood to collect as much as $659,500.00.

55.     On or about May 22, 2014, **Sally Lopez Martinez** and JM Profesional & Training Group, Inc. amended contract 2014-000048.  Pursuant to the amendment, JM Profesional & Training Group, Inc. stood to collect as much as $709,500.00.

56.     On or about June 30, 2014, **Sally Lopez Martinez** and JM Profesional & Training Group, Inc. amended contract 2014-000048.  Pursuant to the amendment, JM Profesional & Training Group, Inc. stood to collect as much as $809,500.00.

57.     In or about September of 2014, **Sally Lopez Martinez** and JM Profesional & Training Group, Inc. amended contract 2014-000048.  Pursuant to the amendment, JM Profesional & Training Group, Inc. stood to collect as much as $944,500.00.

58.     JM Profesional & Training Group, Inc. failed to provide ADL with any of the required follow-up regarding the results of the numerous job fairs conducted pursuant to the contracts, including whether or not any participants in the job fairs received employment.

## WAFFLER AVENUE, LLC.

59.     On or about August 13, 2013, Waffler Avenue, LLC, through its representative, singed a rental agreement with the Puerto Rico Hotel Development Corporation for its location in the Condado neighborhood of San Juan.  The terms of the agreement called for a total monthly rent of $2,506.22.

60.     On or about January 8, 2014, Waffler Avenue, LLC, through its representative, signed a contract with ADL to receive funding to train 42 new employees. The contract number was:  2014-000052.  **Sally Lopez Martinez** signed the contract on behalf of ADL.  Pursuant to the terms of the contract, Waffler Avenue, LLC stood to collect as much as $165,974.00.

21

61.     On or about March 20, 2015, Waffler Avenue, LLC, through its representative, singed an amended rental agreement with the Puerto Rico Hotel Development Corporation for its location in the Condado neighborhood of San Juan.  The terms of the agreement called for a total monthly rent of $2,254.80.

## AAA

62.     In or about January of 2013, **Ivonne M. Falcon Nieves** was named as the Vice President of AAA by Person D.  Previously, **Ivonne M. Falcon Nieves** had served as Treasurer of AAA.

63.     On or about January 6, 2013, four days after Person A was sworn in as Governor of Puerto Rico, **Sonia M. Barreto Colon** sent an email from her Live address to a co-conspirator (not indicted herein) and **Anaudi Hernandez Perez's** Gmail address. The email had **Sonia M. Barreto Colon's** resume as an attachment.  In the body of the email message **Barreto Colon** wrote the following, which appears here in a redacted and translated format, "[a]ttached I send my resume for consideration.  Currently I work in [AAA] and I am interested in occupying the post of Purchasing Director.  The cellular number of Person D is 787-XXX-XXXX."

64.     On or about January 30, 2013, **Anaudi Hernandez Perez** forwarded by email from his Gmail account **Sonia M. Barreto Colon's** resume to an advisor at Fortaleza.

22

65.     In or about February of 2013, Person D received recommendations from a co-conspirator (not indicted herein) and "pressure" from Fortaleza to name **Sonia M. Barreto Colon** as Purchasing Director of AAA.

66.     On or about February 21, 2013, **Anaudi Hernandez Perez** wrote a notation to himself to call **Sonia M. Barreto Colon** on behalf of Person A to inform **Sonia M. Barreto Colon** that she had been named Purchasing Director at AAA.

67.     Throughout, 2013 and 2014, **Anaudi Hernandez Perez** provided **Ivonne M. Falcon Nieves** and **Sonia M. Barreto Colon** with things of value in exchange for favorable consideration for **Anaudi Hernandez Perez** and the **Hernandez Companies** with on matters pending before AAA.

68.     Anaudi **Hernandez Perez** and his co-conspirators provided **Sonia M. Barreto Colon** and **Ivonne M. Falcon Nieves** with things of value in exchange for favorable consideration, revisions of potential proposals, favorable amendments, preferential treatment, and confidential information on matters occurring before AAA. The things of value included but not limited to expensive meals, fountain pens, payments of personal debts owed, concert tickets to the Puerto Rico Coliseum, and invitations to other social events.  Hernandez kept written electronic records memorializing the things of value provided to an individuals referred to as "Sonia" or "Sony" and "Ivonne" or "Ivone"  The records, created between October of 2012 and September of 2013 indicate in pertinent part, "Contributions of Anaudi ..., Sonia dinner $221, $180 Rest los Gauchos

with Ivonne, Lunch with Ivonne/Sonia 4/5/13 $135, Breakfast with Sonia/Ivone $176,

Ivonne/Sonia fountain pens $1,665.00, Breakfast Ivone/Sonia $65, Mortons Ivone/Sonia

$320, Sonia hac…..$1,650.00, Sony cri….$2,240."

69.    On or about, May 16, 2013, **Anaudi Hernandez Perez** and/or a co-

conspirator caused a cash payment of $2565.31 to be made to eliminate a pre-existing

CRIM debt of **Sonia M. Barreto Colon** at the CRIM Regional Office in Aguadilla,

Puerto Rico.

70.    Commencing in early 2013, and continuing through 2014, **Anaudi**

**Hernandez Perez** and his co-conspirators garnered preferential treatment, and

confidential information on matters occurring before AAA.  The details of the contracts

are outlined below.

### I A Mech Chem, Inc.

71.    From in or about 2010 through 2013 I A Mech Chem, Inc. had contracts

with AAA to provide maintenance and service to the water and sewer systems in Puerto

Rico.

72.    By on or about February of 2013, AAA owed I A Mech Chem, Inc.

approximately $1,000,000.00 million dollars for work performed under the contracts.

73.    From in or about February of 2013, through in or about June of 2013,

Anaudi Hernandez Perez and co-conspirators (not indicted herein) utilized their contacts

within AAA, including **Sonia M. Barreto Colon** and **Ivonne M. Falcon Nieves**, in order

to secure a partial payment of approximately $834.043.00 from AAA on behalf of I A Mech Chem, Inc.  Both **Sonia M. Barreto Colon** and **Ivonne M. Falcon Nieves** utilized their positions within AAA in order to provide favorable treatment to **Anaudi Hernandez Perez** in securing the $834,043.00 payment to I A Mech Chem, Inc.

74.     As payment for securing partial payment on behalf of I A Mech Chem, Inc., **Anaudi Hernandez Perez** and his co-conspirators demanded and received $100,000.00.

75.     On or about May 24, 2013, a representative of I A Mech Chem Inc. wrote a check payable to cash in the amount of $7,500.00 as partial payment of the $100,000 to **Anaudi Hernandez Perez** and his co-conspirators.  The check was negotiated by a co-conspirator (not indicted herein).

76.     On or about May 24, 2013, a representative of I A Mech Chem Inc. wrote a check payable to cash in the amount of $8,500.00 as partial payment of the $100,000 to **Anaudi Hernandez Perez** and his co-conspirators.  The check was negotiated by **Anaudi Hernandez Perez**.

77.     On or about May 24, 2013, a representative of I A Mech Chem Inc. wrote a check payable to cash in the amount of $8,500.00 as partial payment of the $100,000 to **Anaudi Hernandez Perez** and his co-conspirators.  The check was negotiated by a co-conspirator (not indicted herein).

78.     On or about May 24, 2013, a representative of I A Mech Chem Inc. wrote a check payable to cash in the amount of $8,500.00 as partial payment of the $100,000 to

**Anaudi Hernandez Perez** and his co-conspirators. The check was negotiated by a co-conspirator (not indicted herein).

79.     On or about May 31, 2013, a representative of I A Mech Chem Inc. wrote a check payable to cash in the amount of $8,000.00 as partial payment of the $100,000 to **Anaudi Hernandez Perez** and his co-conspirators. The check was negotiated by a relative of **Anaudi Hernandez Perez**.

80.     In or about June of 2013, a representative of I A Mech Chem Inc. provided a lump sum cash payment to a co-conspirator (not indicted herein) in order to finalize the $100,000.00 payment.

## Links Group, LLC

81.     On or about November 22, 2013, Links Group, LLC, through its representative, signed a contract with AAA for professional services. The contract number was: 2014-000163. Person D signed the contract on behalf of AAA. Pursuant to the terms of the contract, Links Group, LLC stood to collect as much as $635,483.64.

## 3 Comm Global, Inc.

82.     Between April and June of 2013, **Sonia M. Barreto Colon** and **Ivonne M. Falcon Nieves** assisted **Anaudi Hernandez Perez** and his co-conspirators (not indicted herein) with the creation and drafting of an ultimately unsuccessful proposals for a web site for the purchasing department of AAA, a web site for the human resources department of AAA, and a proposal for a Radio Frequency Identification system

26

("RFID"). According to the projections of 3 Comm Global, Inc. the value of professional services contracts that these proposals could have generated was well in excess of $1,000,000.00.

83.    On or about April 28, 2013, a co-conspirator (not indicted herein) sent an email from the co-conspirator's private email address to **Ivonne M. Falcon Nieves's** email address at AAA containing a preliminary draft of the proposal referred to as a "Flow Chart." **Anaudi Hernandez Perez** was carbon copied on the email communication. **Ivonne M. Falcon Nieves** replied to the email thanking the co-conspirator.

84.    On or about April 29, 2013, a co-conspirator (not indicted herein) sent an email from the co-conspirator's private email address to various other co-conspirators, including **Anaudi Hernandez Perez**. In the communication, the co-conspirator indicated that he had spoken with **Sonia M. Barreto Colon**, and **Sonia M. Barreto Colon** had provided the co-conspirator with the results of prior studies commissioned by AAA in 2007, which could be utilized to improve 3 Comm Global, Inc.'s proposal.

85.    On or about April 30, 2013, a co-conspirator (not indicted herein) sent an email from the co-conspirator's private email address to **Anaudi Hernandez Perez's** Gmail address and **Sonia M. Barreto Colon** and **Ivonne M. Falcon Nieves's** email addresses at AAA. In the communication, the co-conspirator indicated that the co-

conspirator needed the plans for 16 warehouses of AAA in order to make projections regarding the proposal.

86.     On or about May 2, 2013, a co-conspirator (not indicted herein) sent an email from the co-conspirator's private email address to **Anaudi Hernandez Perez's** Gmail address and **Sonia M. Barreto Colon** and **Ivonne M. Falcon Nieves's** email addresses at AAA.  In the communication, the co-conspirator requested technical information from AAA regarding their application programing interfaces in order to enhance 3 Comm Global's proposal.

87.     On or about May 2, 2013, **Ivonne M. Falcon Nieves** instructed an AAA employee, by email, to provide her with the requested technical information.  On that same day, the employee verified and provided the information, by email, to **Ivonne M. Falcon Nieves**.  The following day, May 3, 2013, **Ivonne M. Falcon Nieves** forwarded the information, via email, to the requesting co-conspirator (not indicted herein) as well as **Sonia M. Barreto Colon** and **Anaudi Hernandez Perez**.

88.     On or about May 13, 2013, a co-conspirator (not indicted herein) sent an email from the co-conspirator's private email address to **Anaudi Hernandez Perez's** Gmail address and **Sonia M. Barreto Colon** and **Ivonne M. Falcon Nieves's** email addresses at AAA.  Attached to the communication were three timetable projections for the implementation of three proposed projects with AAA.  The projects were the web site creation proposal for the purchasing department, a web site creation proposal for the

human resources department, and a proposal for a Radio Frequency Identification system ("RFID").

89.     On or about May 14, 2013, a co-conspirator (not indicted herein) sent three separate emails from the co-conspirator's private email address to **Anaudi Hernandez Perez's** Gmail address and **Sonia M. Barreto Colon** and **Ivonne M. Falcon Nieves's** email addresses at AAA. Attached to each email communication was a revised version of the three proposals mentioned in the preceding paragraph.

90.     On or about May 15, 2013, May 16, 2013, May 20, 2013, and May 21, 2013, a co-conspirator (not indicted herein) sent separate emails from the co-conspirator's private email address to **Anaudi Hernandez Perez's** Gmail address and **Sonia M. Barreto Colon** and **Ivonne M. Falcon Nieves's** email addresses at AAA. Attached to each email communication were various revised versions of the three proposals mentioned in the preceding paragraphs.

91.     On or about May 24, 2013, an employee of AAA sent an email to the several co-conspirators (not indicted herein), **Ivonne M. Falcon Nieves, Sonia M. Barreto Colon**, and **Anaudi Hernandez Perez**. In the body of the email, the employee provided page by page suggested revisions to 3 Comm Global Inc.'s proposal for the AAA purchasing department web site. On that same date, in a reply email, a co-conspirator (not indicted herein) answered each of the suggestions previously made by the AAA employee.

92.     On May 24, 2013, after reviewing the email string described in the previous paragraph, **Ivonne M. Falcon Nieves** sent an email to the AAA employee, **Sonia M. Barreto Colon**, **Anaudi Hernandez Perez**, and other co-conspirators (not indicted herein).  In the communication, **Ivonne M. Falcon Nieves** indicates that utilizing certain information in the proposal was at her request, and that the information should remain in the proposal.

93.     On or about June 4, 2013, a co-conspirator (not indicted herein) sent an email from the co-conspirator's private email address to, among various others, **Anaudi Hernandez Perez's** Gmail address and **Sonia M. Barreto Colon** and **Ivonne M. Falcon Nieves's** email addresses at AAA.  Attached to each email communication was the tenth version of 3 Comm Global, Inc.'s proposal for a web site for the human resources department of AAA.

## EKO Technologies, LLC

94.     On or about April 13, 2015, EKO Technologies, LLC, through its representative, signed a contract with AAA for pilot program.  The contract number was: 2015-000229.  Person D signed the contract on behalf of AAA.

All in violation of Title 18, United States Code, § 371.

## COUNT TWO
### 18 U.S.C. § 1349
### (Conspiracy to Commit Honest Services Wire Fraud)

95.     The allegations contained in Count One of this Indictment are re-alleged and incorporated herein by reference.

96.     From in or about the year 2012, until the return of the instant Indictment, defendants **Anaudi Hernandez Perez**, **Sally Lopez Martinez**, and others known and unknown to the Grand Jury did knowingly combine, conspire, confederate, and agree with each other and others known and unknown to the Grand Jury to commit an offense against the United States, that is:  to devise and intend to devise a scheme and artifice to defraud and deprive the United States and the citizens of Puerto Rico of the honest services from public official **Sally Lopez Martinez**, in violation of 18 U.S.C. §§ 1343, 1346 and 1349.

## COUNTS 3-5
## 18 U.S.C. § 1343
## (Honest Services Wire Fraud)

97.     The allegations contained in Count One of this Indictment are re-alleged and incorporated herein by reference.

98.     On or about the dates listed below, in the District of Puerto Rico and elsewhere, the defendants **Anaudi Hernandez Perez**, **Sally Lopez Martinez**, and others known and unknown to the Grand Jury, for the purpose of executing the scheme and artifice to defraud as set forth in Count One, transmitted and caused to be transmitted by means of wire communications in interstate commerce, certain writings and signals, as more specifically described below:

| COUNT | DATE | PROVIDER | WIRES |
|-------|------|----------|-------|
| 3 | 04/03/2013 | gmail.com | Electronic mail message from **Sally Lopez Martinez** to **Anaudi Hernandez Perez**. **Lopez** forwards an email from an ADL employee containing the graphic design for "Ley the Empleos Ahora" ("Jobs Now Act"). |
| 4 | 04/04/2013 | gmail.com | Electronic mail message from **R*****M***** to **Sally Lopez Martinez** and copied to **Anaudi Hernandez Perez**, H*****V***** and J*****R*****. **R*****M******* sends a contract proposal to ADL. The subject matter is listed as "Propuesta Plataforma Registro de Eventos" ("Events Registry Platform Proposal"). |

| 5 | 11/01/2013 | gmail.com | Electronic mail message from **Sally Lopez Martinez** to **Anaudi Hernandez Perez**. **Lopez** forwards an email from an ADL employee containing the list of "words" to be used. The subject matter is listed as "Palabras Solicitadas" ("Requested Words"). |
|---|---|---|---|

All in violation of Title 18, <u>United States Code</u>, Sections 1343 & 1346.

<u>COUNT 6</u>
<u>18 U.S.C. § 1349</u>
**(Conspiracy to Commit Honest Services Wire Fraud)**

99.    The allegations contained in Count One of this Indictment are re-alleged and incorporated herein by reference.

100.    From in or about the year 2012, until the return of the instant Indictment, defendants **Anaudi Hernandez Perez**, **Sonia M. Barreto Colon**, **Ivonne M. Falcon Nieves**, and others known and unknown to the Grand Jury did knowingly combine, conspire, confederate, and agree with each other and others known and unknown to the Grand Jury to commit an offense against the United States, that is:  to devise and intend to devise a scheme and artifice to defraud and deprive the United States and the citizens of Puerto Rico of the honest services from public officials **Sonia M. Barreto Colon** and **Ivonne M. Falcon Nieves**, in violation of 18 U.S.C. §§ 1343, 1346 and 1349.

33

## COUNTS 7-9
### 18 U.S.C. § 1343
### (Honest Services Wire Fraud)

101.   The allegations contained in Count One of this Indictment are re-alleged and incorporated herein by reference.

102.   On or about the dates listed below, in the District of Puerto Rico and elsewhere, the defendants **Anaudi Hernandez Perez**, **Sonia M. Barreto Colon**, **Ivonne M. Falcon Nieves**, and others known and unknown to the Grand Jury, for the purpose of executing the scheme and artifice to defraud as set forth in Counts One, transmitted and caused to be transmitted by means of wire communications in interstate commerce, certain writings and signals, as more specifically described below:

| COUNT | DATE | PROVIDER | WIRES |
|-------|------|----------|-------|
| 7 | 05/24/2013 | gmail.com | Electronic mail message from **Ivonne M. Falcon Nieves** to a AAA employee, and copied to **Anaudi Hernandez Perez, Sonia M. Barreto Colon,** and others.   **Falcon** explains a AAA employee that the inclusion of an internal AAA study in 3Comm's Purchasing System Proposal was her idea. The subject matter is listed as "Propuesta Portal de Compras" ("Proposal Purchasing Portal"). |

| 8 | 10/31/2013 | me.com | Electronic mail message from **Anaudi Hernandez Perez** to **Ivonne M. Falcon Nieves**, and copied to **Sonia M. Barreto Colon**. Hernandez forwards a sponsor request from **Sally Lopez Martinez**. The subject matter is listed as "Auspicio AAA" ("sponsorship AAA"). |
| 9 | 11/04/2013 | me.com | Electronic mail message from **Anaudi Hernandez Perez** to **Sonia M. Barreto Colon** and copied to **Ivonne M. Falcon Nieves**. Hernandez forwards 2 attachments containing ADL Layout and AAA booth. The subject matter is listed as "FERIA DE EMPLEOS" ("Job fairs"). |

All in violation of Title 18, United States Code, Section 1343 and 1346.

## COUNT 10
## 18 U.S.C. § 666(a)(2)
## (Paying a Bribe to an Agent of an Organization Receiving Federal Funds)

103.    The allegations contained in Count One of this Indictment are re-alleged and incorporated herein by reference.

104.    From in or about the year 2012, until the return of the instant Indictment, defendant **Anaudi Hernandez Perez**, aided and abetted by others, both known and unknown to the Grand Jury, did corruptly give, offer, and agree to give a thing of value to any person intending to influence and reward an agent of ADL, in connection with a transaction and series of transactions of ADL, involving $5,000 or more; that is, **Anaudi Hernandez Perez** gave **Sally Lopez Martinez** things of value to influence and reward

35

**Sally Lopez Martinez** for the use of her official position to assist **Anaudi Hernandez Perez** and his associates by providing favorable treatment for **Hernandez Perez** and his associates in official matters before ADL.

All in violation of 18 <u>United States Code</u>, §§ 666(a)(2) and 2.


<u>**COUNT 11**</u>
<u>**18 U.S.C. § 666(a)(1)(B)**</u>
<u>**(Receipt of a Bribe by Agent of an Organization Receiving Federal Funds)**</u>

105.   The allegations contained in Count One of this Indictment are re-alleged and incorporated herein by reference.

106.   From in or about the year 2012, until the return of the instant Indictment, defendant **Sally Lopez Martinez** did corruptly solicit, demand, accept and agree to accept a thing of value from a person, intending to be influenced and rewarded in connection with a transaction and series of transactions of ADL, involving $5,000 or more; that is **Anaudi Hernandez Perez** gave **Sally Lopez Martinez** things of value to influence and reward **Sally Lopez Martinez** for the use of her official position to assist **Anaudi Hernandez Perez** and his associates by providing favorable treatment for **Hernandez Perez** and his associates in official matters before ADL.

All in violation of 18 U.S.C. §§ 666(a)(1)(B) and 2.

36

## COUNT 12
### 18 U.S.C. § 666(a)(2)
### (Paying a Bribe to an Agent of an Organization Receiving Federal Funds)

107.   The allegations contained in Count One of this Indictment are re-alleged and incorporated herein by reference.

108.   From in or about the year 2012, until the return of the instant Indictment, defendant **Anaudi Hernandez Perez**, aided and abetted by others, both known and unknown to the Grand Jury, did corruptly give, offer, and agree to give a thing of value to any person intending to influence and reward an agent of AAA, in connection with a transaction and series of transactions of AAA, involving $5,000 or more; that is, **Anaudi Hernandez Perez** gave **Ivonne M. Falcon Nieves** things of value to influence and reward **Ivonne M. Falcon Nieves** for the use of her official position to assist **Anaudi Hernandez Perez** and his associates by providing favorable treatment for **Hernandez Perez** and his associates in official matters before AAA.

All in violation of 18 United States Code, §§ 666(a)(2) and 2.

## COUNT 13
### 18 U.S.C. § 666(a)(1)(B)
### (Receipt of a Bribe by Agent of an Organization Receiving Federal Funds)

109.   The allegations contained in Count One of this Indictment are re-alleged and incorporated herein by reference.

37

110.    From in or about the year 2012, until the return of the instant Indictment,

defendant **Ivonne M. Falcon Nieves** did corruptly solicit, demand, accept and agree to

accept a thing of value from a person, intending to be influenced and rewarded in

connection with a transaction and series of transactions of AAA, involving $5,000 or more;

that is **Anaudi Hernandez Perez** gave **Ivonne M. Falcon Nieves** things of value to

influence and reward **Ivonne M. Falcon Nieves** for the use of her official position to assist

**Anaudi Hernandez Perez** and his associates by providing favorable treatment for

**Hernandez Perez** and his associates in official matters before AAA.

All in violation of 18 U.S.C. §§ 666(a)(1)(B) and 2.

### COUNT 14
### 18 U.S.C. §  666(a)(2)
### (Paying a Bribe to an Agent of an Organization Receiving Federal Funds)

111.    The allegations contained in Count One of this Indictment are re-alleged

and incorporated herein by reference.

112.    From in or about the year 2012, until the return of the instant Indictment,

defendant **Anaudi Hernandez Perez**, aided and abetted by others, both known and

unknown to the Grand Jury, did corruptly give, offer, and agree to give a thing of value to

any person intending to influence and reward an agent of AAA, in connection with a

transaction and series of transactions of AAA, involving $5,000 or more; that is, **Anaudi**

**Hernandez Perez** gave **Sonia M. Barreto Colon** things of value to influence and reward

**Sonia M. Barreto Colon** for the use of her official position to assist **Anaudi Hernandez**

**Perez** and his associates by providing favorable treatment for **Hernandez Perez** and his associates in official matters before AAA.

All in violation of 18 United States Code, §§ 666(a)(2) and 2.

## COUNT 15
## 18 U.S.C. § 666(a)(1)(B)
## (Receipt of a Bribe by Agent of an Organization Receiving Federal Funds)

113.   The allegations contained in Count One of this Indictment are re-alleged and incorporated herein by reference.

114.   From in or about the year 2012, until the return of the instant Indictment, defendant **Sonia M. Barreto Colon** did corruptly solicit, demand, accept and agree to accept a thing of value from a person, intending to be influenced and rewarded in connection with a transaction and series of transactions of AAA, involving $5,000 or more; that is **Anaudi Hernandez Perez** gave **Sonia M. Barreto Colon** things of value to influence and reward **Sonia M. Barreto Colon** for the use of her official position to assist **Anaudi Hernandez Perez** and his associates by providing favorable treatment for **Hernandez Perez** and his associates in official matters before AAA.

All in violation of 18 U.S.C. §§ 666(a)(1)(B) and 2.

## COUNT 16
## 18 U.S.C. § 1951
## (Extortion Through Fear of Economic Harm)

115.    The allegations contained in Count One of this Indictment are re-alleged and incorporated herein by reference.

116.    Contractor A was the owner of a company that had performed legitimate services for AAA, and was owed approximately $1,000,000.00.

117.    From on or about March of 2013 through in or about  the year 2014, the defendant herein **Anaudi Hernandez Perez**, aided and abetted by others known and unknown to the Grand Jury, did knowingly obstruct, delay and affect in any degree commerce and the movement of articles and commodities in commerce by extortion, as those terms are defined in Title 18, United States Code, Section 1951; that is defendant **Anaudi Hernandez Perez** and his associates, obtained property not due to them, specifically, $100,000.00 from Contractor A, in exchange for utilizing connections and influences within AAA in order to secure a portion of the money owed to Contractor A, with Contractor A's consent, induced through the wrongful use of a fear of economic loss.

All in violation of Title 18, United States Code, Section 1951(a) and 2.

40

## COUNT 17
## 18 U.S.C. § 1951
## (Extortion Through Fear of Economic Harm)

118.    Contractor A was the owner of a company that had performed legitimate services for AAA, and was owed approximately $1,000,000.00.

119.    From in or about the year 2012, through in or about the year 2013, the defendants herein **Ivonne M. Falcon Nieves** and **Marielis Falcon Nieves**, aided and abetted each other and by others known and unknown to the Grand Jury, did knowingly obstruct, delay and affect in any degree commerce and the movement of articles and commodities in commerce by extortion, as those terms are defined in Title 18, United States Code, Section 1951; that is defendant **Ivonne M. Falcon Nieves** utilized her position at AAA in order to enable her sister, defendant **Marielis Falcon Nieves**, to obtain property not due to defendant **Marielis Falcon Nieves**, specifically, cash payments, check payments, payments to contractors, and the performance of residential tree trimming, from Contractor A, with Contractor A's consent, induced through the wrongful use of a fear of economic loss.

All in violation of Title 18, United States Code, Section 1951(a) and 2.

## COUNT 18
## 18 U.S.C. § 1956(h)
## (Conspiracy to Commit Money Laundering)

120. The allegations contained in Count One of this Indictment are re-alleged and incorporated herein by reference.

121. From on or about 2012, until on or about the date of the return of this Indictment, in the District of Puerto Rico, elsewhere, and within the jurisdiction of this Court, the defendants and co-conspirators herein, including but not limited to **Anaudi Hernandez Perez** and **Javier A. Muniz Alvarez**, did knowingly combine, conspire, and agree with each other and with other persons both known and unknown to the Grand Jury to commit offenses against the United States in violation of Title 18, United States Code, Section 1956, to wit: to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce, which transactions involved the proceeds of specified unlawful activity, that is, proceeds of violations of Title 18, United States Code, § 666 (bribery involving a program receiving federal funds); Title 18, United States Code, § 1343 & 1349 (wire fraud and conspiracy to commit wire fraud), knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knowing that the property involved in the financial transactions represented the proceeds of some

form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

All in violation of Title 18, United States Code, Section 1956(h).


## COUNT 19
## Title 18, United States Code, Section 1623(a)
## (False Declarations Before Grand Jury)

122.   On or about the November 12, 2015, in the District of Puerto Rico and within the jurisdiction of this court, the defendant, **Carlos F. Luna Cruz**, while under oath and testifying in a proceeding before a Grand Jury of the United States in the District of Puerto Rico, knowingly did make a false material declaration, that is to say:

123.   At the time and place aforesaid the grand jury was conducting an investigation to determine whether violations of Title 18, United States Code, Sections 666, 1343, 1349 and 1956 had been committed, and to identify the persons who had committed, caused the commission of, and conspired to commit such violations.  It was material to the investigation that the grand jury ascertain **Javier A. Muniz Alvarez's** relationship, if any, with a company known as JM Profesional & Training Group, Inc.

124.   At the time and place alleged, **Carlos F. Luna Cruz** appearing as a witness under oath at a proceeding before the grand jury knowingly made the following declaration in response to questions with respect to the material matter alleged in the preceding paragraph as follows:

| | |
|---|---|
| *Q:* | *Alright. And let me ask you again – I know you said last time that Javi Muñiz had nothing to do with J&M Associates – or, J&M Professionals, right?* |
| *A:* | *Um hum.* |
| *Q:* | *That remains your sworn testimony?* |
| *A:* | *Yes. Yes.* |
| *Q:* | *Again, explain why he was at some of these jobs fairs then.* |
| *A:* | *Okay. Mr. Muñiz has been my friend since we were in medical school, and Muñiz has been – had worked for the administration Occupational Development Council, and he knew, he was much more familiar with how the system moved to – to advise me. But he didn't work for it.* |
| *Q:* | *So, he had nothing to do, either on paper, off paper, or off the books with J&M Professionals?* |
| *A:* | *No.* |
| *Q:* | *Okay.* |
| *A:* | *Just as a representative at some point. For example, --* |
| *Q:* | *Wait, wait. I don't understand –* |
| *A:* | *-- since he's my –* |
| *Q:* | *-- what you're saying. So, you're changing – are you changing your testimony?* |
| *A:* | *No.     He never – he never worked for us, ever.* |
| *Q:* | *He didn't work for you?* |
| *A:* | *No,* |
| *Q:* | *He's not part of the company?* |
| *A:* | *No.  He's not part of the company.* |
| *Q:* | *He's got nothing to do with the company?* |
| *A:* | *No.* |

125.    The aforesaid underscored testimony of **Carlos F. Luna Cruz**, as he then

and there well knew and believed, was false in that, **Carlos F. Luna Cruz** knew that

**Javier A. Muniz Alvarez** a *de facto* partial owner of JM Profesional & Training Group,

Inc.

All in violation of Title 18, United States Code, Section 1623(a).

## COUNT 20
### Title 18, United States Code, Section 1623(a)
### (False Declarations Before Grand Jury)

126.   On or about the October 28, 2015, in the District of Puerto Rico and within the jurisdiction of this court, the defendant, **Carlos F. Luna Cruz**, while under oath and testifying in a proceeding before a Grand Jury of the United States in the District of Puerto Rico, knowingly did make a false material declaration, that is to say:

127.   At the time and place aforesaid the grand jury was conducting an investigation to determine whether violations of Title 18, United States Code, Sections 666, 1343, 1349 and 1956 had been committed, and to identify the persons who had committed, caused the commission of, and conspired to commit such violations.  It was material to the investigation that the grand jury ascertain **Anaudi Hernandez Perez's** relationship, if any, with a company known as JM Profesional & Training Group, Inc.

128.   At the time and place alleged, **Carlos F. Luna Cruz** appearing as a witness under oath at a proceeding before the grand jury knowingly made the following declaration in response to questions with respect to the material matter alleged in the preceding paragraph as follows:

> Q:  *What did Anau[d]y Hernandez have to do with these job fairs?*
> A:  *He would – he was not involved in anything that had to do with the fairs.*
>      *He wasn't – he wasn't employed by our company.*
> Q:  *Did he help get the contracts in any manner?*
> A:  *No.*

129.    The aforesaid underscored testimony of **Carlos F. Luna Cruz**, as he then and there well knew and believed, was false in that, **Anaudi Hernandez Perez** participated and helped secure the contracts for the job fairs.

All in violation of Title 18, United States Code, Section 1623(a).


### COUNT 21
### Title 18, United States Code, Section 1512(c)(2)
### (Obstruction Of Justice)

130.    On or about October 28, 2015, in the District of Puerto Rico and within the jurisdiction of this Court, the defendant, **Carlos F. Luna Cruz**, did knowingly, intentionally, and corruptly obstruct, influence, and impede an official proceeding, to wit: a grand jury investigation in the District of Puerto Rico, by providing false and misleading testimony to a grand jury in violation of Title 18, United States Code, Section 1512(c)(2).

### COUNT 22
### Title 18, United States Code, Section 1512(c)(2)
### (Obstruction Of Justice)

131.    On or about November 12, 2015, in the District of Puerto Rico and within the jurisdiction of this Court, the defendant, **Carlos F. Luna Cruz**, did knowingly, intentionally, and corruptly obstruct, influence, and impede an official proceeding, to wit: a grand jury investigation in the District of Puerto Rico, by providing false and

misleading testimony to a grand jury in violation of Title 18, <u>United States Code</u>, Section 1512(c)(2).

## COUNT 23
### Title 18, United States Code, Section 1512(c)
### (Destruction of Records)

132.   On a specific date unknown, but in or about the year 2015, in the District of Puerto Rico, the defendants herein, **Carlos F. Luna Cruz** and **Javier A. Muniz Alvarez**, aiding and abetting one another, did corruptly attempt to obstruct, influence, and impede an official proceeding, to wit: an investigation being conducted by the Federal Bureau of Investigation to determine whether violations of Title 18, <u>United States Code</u>, Sections 666, 1343, 1349 and 1956 had been committed, by replacing the computers utilized by JM Profesional & Training Group, Inc. to conduct official business with ADL in order to keep authorities from having access to contents thereof, in violation of Title 18, <u>United States Code</u>, Section 1512(c)(2) and 2.

## COUNT 24
### 18 U.S.C. § 1346
### (Conspiracy to Commit Wire Fraud)

133.   Unless otherwise specified, at all times material to this Indictment:

134.   Defendant **Anaudi Hernandez Perez** was a businessman who lived in the Commonwealth of Puerto Rico. **Hernandez Perez** served as a fund-raiser and member of Congressman A's finance committee.

135.   Defendant **Xavier Gonzalez Calderon** was the Administrator for the House of Representatives of the Commonwealth of Puerto Rico.

136.   Defendant **Victor R. Burgos Cotto** was the Director of Technology for the House of Representatives.

137.   Congressman A was the Speaker of the House of Representatives of Puerto Rico.

138.   Person E was a member of 3 Comm Global, Inc. and an unindicted co-conspirator.

139.   Defendant **Glenn O. Rivera Pizarro** was a Special Assistant for Administration at the House of Representatives of Puerto Rico.

140.   3 Comm Global, Inc. was a for profit corporation incorporated under the laws of Puerto Rico on November 9, 2012.

## THE CONSPIRACY AND ITS OBJECTS

141.   From in or about 2012 through in or about the return of the instant Indictment, in the District of Puerto Rico and elsewhere,

**[1] Anaudi Hernandez Perez,**
**[7] Xavier Gonzalez Calderon,**
**[8] Victor R. Burgos Cotto,**
**[10] Glenn O. Rivera Pizarro,**

the defendants herein, and others known and unknown to the Grand Jury, did knowingly and willfully conspire and agree with each other to commit an offense against the United States, that is, devising a scheme and artifice to defraud and obtain money and properties

48

by means of false and fraudulent pretenses, and promises, and in doing so, transmitting and causing to be transmitted by means of wire communications in interstate or foreign commerce, writings, signals, and email communications for the purpose of executing such scheme and artifice to defraud, in violation of Title 18, United States Code, Section 1343.

## PURPOSE OF THE CONSPIRACY

142.    The purpose of the conspiracy was to steer contracts with the Puerto Rico House of Representatives for telephone replacement and services to 3 Comm Global, Inc. This was accomplished through a corrupted RFP bidding process wherein 3 Comm Global, Inc. was provided with a competitive advantage based, at least in part, on the close relationship between **Anaudi Hernandez Perez**, **Xavier Gonzalez Calderon**, **Glenn O. Rivera Pizarro** and Congressman A.

## OVERT ACTS IN FURTHERANCE OF THE CONSPIRACY

143.    In furtherance of the conspiracy, and to accomplish its purpose, the co-conspirators (both indicted and unindicted herein), committed the following overt acts in the District of Puerto Rico and elsewhere:

144.    On or about November 9, 2012, 3 Comm Global, Inc. was incorporated with the Puerto Rico Department of State.

145.   On or about November 13, 2012, **Xavier Gonzalez Calderon** sent an email from his personal email account with Hotmail to **Anaudi Hernandez Perez** at his personal email account with Gmail.   The email appears below in a redacted format:

---

[Original message - (redacted)]

**From:**         Xavier Gonzalez <*****************@hotmail.com>
**To:**           Anaudi Hernadez ****************@gmail.com
**Cc:**
**Sent:**         Tue Nov 13 2012 21:31:14 AST
**Subject:**      Saludos
**Attachments: (2)**
☐ Carta a Garcia Padilla.1.pdf
☐ Xavier Gonzalez Resume.pdf

---------------------------------------------------------------------
Saludos Anaudi:

!!GANAMOS!! hay que seguir celebrando hasta las navidades que felicidad. De lo que habiamos hablado para el Consejo lo he estado evaluando pues mi hermano sigue como Consultor en los consorcios y la ves pasada se creo una controversia mal infundada sobre conflictos éticos, aunque no surgió el conflicto hay gente con mala intención que lo podrían traer nuevamente, en adición mi compañera sentimental trabaja en el Consejo.

Me gustaría dirigir los esfuerzos hacia alguna otra agencia, podría ser Manejo de Emergencia donde estuve como subdirector o alguna otra que me gustaría discutirlo contigo. Cuando puedas me llamas o te llamo, también te puedo ver en Aguadilla. Adjunto nueva carta y resume. GraciasXavier

---

[English translation - (redacted)]

**From:**         Xavier Gonzalez <*****************@hotmail.com>
**To:**           Anaudi Hernadez <****************@gmail.com>
**Cc:**
**Sent:**         Tue Nov 13 2012 21:31:14 AST
**Subject:**      Greetings
**Attachments: (2)**
☐ Letter to Garcia Padilla.1.pdf
☐ Xavier Gonzalez Resume.pdf

---------------------------------------------------------------------
Greetings Anaudi

!!WE WON!! have to continue celebrating until Christmas such happiness. About what we had discuss for the Council I have been evaluating since my brother continues to be a consultant for the consortiums and last time there was an ill founded controversy about ethical conflicts, although no conflict arose there are people with bad intentions that could bring this up again, in addition my consensual partner works at the Council.

I would like to lead the efforts towards some other agency, could be Emergency Management where I had been the sub director or some other that I would like to discuss with you. Call me when you can or I'll call you, I can also see you in Aguadilla.

New letter and resume attached. ThanksXavier

146.   In or about January of 2013, **Xavier Gonzalez Calderon** was hired by Congressman A as the Administrator of the Puerto Rico House of Representatives.  As Administrator, **Gonzalez Calderon** had the authority to enter binding contracts on behalf of the House of Representatives.

147.   On or about February 7, 2013, **Victor R. Burgos Cotto** sent an email from his personal email address with Gmail **to Xavier Gonzalez Calderon's** House of Representatives email address.  In the email message, **Burgos Cotto** recommends that the communications technologies of the House of Representatives be integrated and updated.

148.   On or about March 18, 2013, Person E sent an email from his private email address to **Victor R. Burgos Cotto's** House of Representatives email address and **Anaudi Hernandez Perez's** Gmail address wherein Person E asked **Burgos Cotto** about the number of phones that would be needed so that he could adjust the quoted price.

149.   On or about March 18, 2013, Person E sent an email from his private email address to **Victor R. Burgos Cotto's** House of Representatives email address, **Anaudi Hernandez Perez's** Gmail address, and other unindicted co-conspirators email addresses wherein Person E told **Burgos Cotto** that Person E would be sending the revised proposal for telephone services later that afternoon.

150.   On or about March 21, 2013, Person E sent an email from his private email address to **Victor R. Burgos Cotto's** House of Representatives email address,  **Anaudi**

51

**Hernandez Perez's** Gmail address, and other unindicted co-conspirators email addresses wherein Person E attached 3 Comm Global, Inc.'s first consolidated telephone service proposal to the House of Representatives. The proposal was for a total of $598, 822.00.

151. On or about April 1, 2013, Person E sent an email from his private email address to **Victor R. Burgos Cotto's** House of Representatives email address, **Anaudi Hernandez Perez's** Gmail address, and other unindicted co-conspirators email addresses wherein Person E told **Burgos Cotto** that Person E and his co-conspirators were available to discuss the proposal.

152. On or about April 10, 2013, Person E sent an email from his private email address to **Anaudi Hernandez Perez's** Gmail address, and other unindicted co-conspirators email addresses wherein Person E forwarded an amended proposal for telephone services to the House of Representatives. This version of the proposal was for $507,251.

153. On or about April 22, 2013, Person E sent an email from his private email address to **Anaudi Hernandez Perez's** Gmail address, and other unindicted co-conspirators email addresses wherein Person E forwarded an amended proposal for telephone services to the House of Representatives. This version of the proposal was for $499,122.00.

154. On or about May 9, 2013, the House of Representatives, through its authorized employee, **Glenn O. Rivera Pizzaro**, sent the formal request for proposal

("RFP") to implement a voice communication system at the House of Representatives. The RFP falsely stated that bids needed to be filed with the Office of Administration of the House of Representatives on or before 4:00 pm on Thursday, May 16, 2013, when in fact defendants **Victor R. Burgos Cotto, Glenn O. Rivera Pizzaro** and **Xavier Gonzalez Calderon** were intending to award the contract to 3 Comm Global, Inc.

155.   On or about May 10, 2013, the House of Representatives, through an authorized employee, sent an email to **Anaudi Hernandez Perez's** Gmail address with the RFP.  According to the RFP, all bids needed to be filed on or before Thursday, May 16, 2013.  As bids were being submitted to the House of Representatives, they would be stamped with the date of receipt.

156.   On or about May 16, 2013, Person E sent an email from his private email address to **Anaudi Hernandez Perez's** Gmail address, wherein Person E forwarded an amended proposal for telephone services to the House of Representatives.  This version of the proposal was for $346,651.00.

157.   On or about May 17, 2013, notwithstanding that the timeframe to submit proposals had expired, Person E sent an email from his private email address to **Victor R. Burgos Cotto's** House of Representatives email address and **Anaudi Hernandez Perez's** Gmail address wherein Person E attached 3 Comm Global, Inc.'s amended consolidated telephone service proposal to the House of Representatives.  The untimely proposal was for a total of $346,651.00.

158.   On or about May 17, 2013, Person E sent an email from his private email address to **Glenn O. Rivera Pizarro's** House of Representatives email address, **Glenn O. Rivera Pizarro's** personal email address, and **Anaudi Hernandez Perez's** Gmail address wherein Person E attached 3 Comm Global, Inc.'s amended consolidated telephone service proposal to the House of Representatives.  The untimely proposal was for a total of $346,651.00.

159.   On or about June 23, 2013, Person E sent an email from his private email address to **Anaudi Hernandez Perez's** Gmail address, and other unindicted co-conspirators email addresses wherein Person E forwarded an amended proposal for telephone services to the House of Representatives.  This version of the untimely proposal was for $253,900.00.

160.   On or about June 23, 2013, an unindicted co-conspirator sent an email to **Anaudi Hernandez Perez's** Gmail address, and other unindicted co-conspirators email addresses.  The email appears below in a redacted format:

[Original message - (redacted)]

From:        H******* V*************@gmail.com>
To:          R******* M*************@3commglobal.com
Cc:          Anaudi Hernandez **************@gmail.com
Sent:        Sun Jun 23 2013 18:49:01 ADT
Subject:     Re: Propuesta Camara

-------------------------------------------------------------------

Mariconzon hay q bajarle $100m a los equipos la propuesta mas cara era $154m... Verifica!!

H*********

On Jun 23, 2013, at 4:13 PM, "********@3commglobal.com" <********@3commglobal.com> wrote:

> La nueva propuesta adjunta - No tengo el email de savier --
> <Propuesta_VoIP_Proposal__v9_062313.pdf>

---

[English translation - (redacted)]

From:        H******* V*************@gmail.com>
To:          R******* M*************@3commglobal.com
Cc:          Anaudi Hernandez **************@gmail.com
Sent:        Sun Jun 23 2013 18:49:01 ADT
Subject:     Re: Propuesta Camara

-------------------------------------------------------------------

Fa**** the equipment has to be lowered by $100k the highest proposal was $154k... Verify!!

H*********

On Jun 23, 2013, at 4:13 PM, "********@3commglobal.com" <********@3commglobal.com> wrote:

> The new proposal attached - Don't have savier's email --
> <House_VoIP_Proposal_v9_062313.pdf>

161.    On or about June 23, 2013, Person E sent an email from his private email

address to **Anaudi Hernandez Perez's** Gmail address, and another unindicted co-

conspirator's email addresses wherein Person E forwarded an amended proposal for

telephone services to the House of Representatives.  This version of the untimely proposal was for $153,900.00.

162.    On or about August 6, 2013 from 3:00 pm until 4:00 pm, **Anaudi Hernandez Perez** organized a meeting with **Xavier Gonzalez Calderon** at the Puerto Rico Capitol Building.   Notes from that meeting reflect that the proposal was discussed and recommendations were given to 3 Comm Global on how to successfully secure the winning bid.

163.    On or about August 7, 2013, Person E sent an email from his private email address to **Anaudi Hernandez Perez's** Gmail address, and other unindicted co-conspirator's email addresses wherein Person E forwarded an amended proposal for telephone services to the House of Representatives.  This version of the untimely proposal was for $149,900.00.  **Anaudi Hernandez Perez** sent a reply email on the same date.  The email appears below in a redacted format:

[Original message - (redacted)]

**From:**  Anaudi Hernandez  *****************@gmail.com>
**To:**  R****** M*****  ****************@************.net
**Cc:**
**Sent:**  Wed Aug 07 2013 14:41:30 ADT
**Subject:**  Re: Propuesta Camara

--------------------------------------------------------------------------------------------------

Cabr*** no te lo vuelvo a decir no uses nada que solo sea 3 comm tODO desde el email! Crea confusion! Usa las otras para la cuentita de banco

Sent from my iPhone

On 08/07/2013, at 1:38 p.m., "*******@**********.net" <*******@***********.net> wrote:
> Anexo - con las revisiones discutida y anotadas en el documento que me enviaron anoche
>
> R******** M******** - PMP, ITIL.
> ..............................
> **** ***** Technologies LLC
> dba. V**** M*****
> email: *******@**********.net
>
> US: 305-***-****
> PR: 787-***-****
> TF: 888-***-****
>
> WWW.************.NET
> WWW.************.net
>
> <Propuesta_VoIP_Camara_v10_031413.pdf>

[English translation - (redacted)]

**From:**  Anaudi Hernandez  *****************@gmail.com>
**To:**  R****** M*****  ****************@************.net
**Cc:**
**Sent:**  Wed Aug 07 2013 14:41:30 ADT
**Subject:**  Re: House Proposal

--------------------------------------------------------------------------------------------------

Mother f**** I'm going to tell you again don't use anything other that 3 comm aLL from the email! Creates confusion! Use the others for the bank account

Sent from my iPhone

On 08/07/2013, at 1:38 p.m., "*******@**********.net" <*******@***********.net> wrote:
> Anexo - con las revisiones discutida y anotadas en el documento que me enviaron anoche
>
> R******** M******** - PMP, ITIL.
> ..............................
> **** ***** Technologies LLC
> dba. V**** M*****
> email: *******@**********.net
>
> US: 305-***-****
> PR: 787-***-****
> TF: 888-***-****
>
> WWW.************.NET
> WWW.************.net
>
> <House_VoIP_Proposal_v10_031413.pdf>

164.    On or about August 13, 2013, **Anaudi Hernandez Perez** sent an email from his private email address to **Xavier Gonzalez Calderon** email address with the House of Representatives.  The email contained a copy of 3 Comm Global Inc.'s untimely proposal for $149,900.00 for equipment costs and $13,500.00 per month for servicing the telephone system.  The version of the proposal attached was dated March 13, 2013.

165.    On or about September 17, 2013 from 5:00 pm until 6:00 pm, **Anaudi Hernandez Perez** organized a meeting with **Xavier Gonzalez Calderon** and another co-conspirator at the offices of 3 Comm Global, Inc., Links Group, LLC and EKO Technologies, LLC located at the VIG Tower in San Juan, Puerto Rico.

166.    In a letter dated on or about September 18, 2013, the House of Representatives notified the RFP participants that 3 Comm Global, Inc. had won the contract with a price of $149,900.00.

167.    On or about October 9, 2013, **Xavier Gonzalez Calderon**, on behalf of the House of Representatives, signed contract number 2014-000256 with 3 Comm Global, Inc. for $149,900.00.  On or about February 18, 2014, contract 2014-000256 was amended for an additional $37,205.00.

168.    On or about October 23, 2013, **Glenn O. Rivera Pizarro** sent an email from his personal account with Yahoo to **Anaudi Hernandez Perez** at his personal email

account with Gmail.  **Rivera Pizarro** attached his resume to the email communication

and requested that **Anaudi Hernandez Perez** assist him with securing a job within the

government.

169.    After awarding the contracts to 3 Comm Global, Inc., several meeting were

held to discuss the implementation new telephone systems for the House of

Representatives.  According to the minutes of the meetings, several co-conspirators,

including **Glenn O. Rivera Pizarro, Anaudi Hernandez Perez** and **Victor R. Burgos**

**Cotto** were present at least one of the meetings.  The minutes also reflect that the

participants discussed plans by 3 Comm Global, Inc. to submit various additional

proposals to the House of Representatives for additional contracts.

170.    On or about December 13, 2013,  **Xavier Gonzalez Calderon**, on behalf of

the House of Representatives, signed contract number 2014-000306 with 3 Comm

Global, Inc. for $94,500.00.  This contract was for the $13,500.00 monthly technical

services of the telephone services.  On or about March 3, 2014, contract number 2014-

000306 was amended.

171.    From on or about October of 2013, until the return of the instant

Indictment, 3 Comm Global, Inc. through its agents, employees, and subcontractors

provided a substandard performance on its contractual obligations with the House of

Representatives.  Accordingly, the House of Representatives, in September of 2015,

contracted another company to complete the work originally to be performed by 3 Comm Global, Inc.

172.    From on or about October of 2013, until the return of the instant Indictment, 3 Comm Global, Inc. received approximately $482,208.42 in compensation from the House of Representatives.  This includes approximately $13,500.00 for monthly technical services between July of 2014 and October of 2015.

All in violation of Title 18, United States Code, Section 1349.

## COUNT 25
## 18 U.S.C. § 666(a)(1)(A)
## (Intentional Misapplication of Property by Agent of an
## Organization Receiving Federal Funds)

173.    From on or about 2013, until the return of the instant Indictment, in the District of Puerto Rico, the defendants **Xavier Gonzalez Calderon**, **Victor R. Burgos Cotto** and **Glenn O. Rivera Pizarro**, being agents of the Commonwealth of Puerto Rico, aided and abetted by **Anaudi Hernandez Perez**, and others known and unknown to the Grand Jury, and the Commonwealth receiving in the one year periods beginning in January of 2013, 2014 and 2015, yearly benefits in excess of $10,000 under any Federal program involving a grant, contract, subsidiary, loan, guarantee, insurance, and other form of Federal assistance, intentionally misapplied property worth at least $5,000 and under the care, custody and control of the Commonwealth of Puerto Rico, through its

House of Representatives, that is, approximately $482,208.42 in contractual obligations to 3 Comm Global, Inc., as fully described in Count 24 of the instant Indictment, said Count fully incorporated by reference herein, in violation of 18 U.S.C. §§ 666(a)(1)(A) and 2.

### Forfeiture Allegations

### Conspiracy; Federal Programs Fraud, Wire Fraud; and Extortion through Fear of Economic Harm

174.    The allegations contained in Counts One (1) through Seventeen (17), Twenty-four (24) and Twenty-Five (25) of the Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

175.    Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), upon conviction on any counts from Counts One (1) through Seventeen (17), Twenty-four (24) and Twenty-Five (25), charging violations of Title 18, United States Code, Sections 371, 666(a)(1)(B), 666(a)(2), 1343, 1346, 1349, and/or 1951 the defendants shall forfeit to the United States of America any property, real or personal, which constitutes or is derived from proceeds traceable to said violations. The property to be forfeited includes, but is not limited to, the following:

    a.  an amount  of money equal to the proceeds of the offense;

    b.  Real estate property described at the Aguadilla Property Registry as:

(Original version) RÚSTICA: Radicada en el Barrio Borinquen del término municipal de Aguadilla, identificado en el plano de inscripción como solar número 4 con una cabida superficial de 1425.1191 metros cuadrados. En lindes por el NORTE, con el solar marcado número 3; por el SUR, con A**** M**** S****; por el ESTE, Océano Atlántico; y por el OESTE, con uso público. Segregación de la finca 9570, inscrita al folio 255 del tomo 427 de Aguadilla.

(English translation) RURAL: At the Borinquen Ward in the municipality of Aguadilla, identified as lot number 4 with a surface 1425.1191 square meters. In the NORTH borders with the lot number 3; To the SOUTH, with A**** M**** S****; To the EAST, the Atlantic Ocean; and to the WEST, with public land. Segregation of the estate 9570, registered at folio 255 of volume 427 of Aguadilla.

(9,000 + square feet oceanfront house with 7 bedrooms and 8 + bathrooms. Photo from above shown below)



176.    If any of the property described above, as a result of any act or omission of the defendants:

    a.  cannot be located upon the exercise of due diligence;

    b.  has been transferred or sold to, or deposited with, a third party;

    c.  has been placed beyond the jurisdiction of the court;

    d.  has been substantially diminished in value; or

e.   has been commingled with other property which cannot be divided without

difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant

to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States

Code, Section 2461(c).

### Forfeiture Allegation
### Conspiracy to Commit Money Laundering

177.   The allegations contained in Count Eighteen (18) of this Indictment are

hereby re-alleged and incorporated by reference for the purpose of alleging forfeitures

pursuant to Title 18, United States Code, Sections 982(a)(1).

178.   Pursuant to Title 18, United States Code, Section 982(a)(1), upon

conviction of an offense in violation of Title 18, United States Code, Section 1956, the

defendants shall forfeit to the United States of America any property, real or personal,

involved in such offense, and any property traceable to such property. The property to be

forfeited includes, but is not limited to, the following: The property to be forfeited

includes, but is not limited to, the following:

a.   an amount  of money equal to the property involved in the offense;

b.   see photograph and description of residence in preceding Forfeiture

Allegation above, which is hereby incorporated by reference herein.

179.   If any of the property described above, as a result of any act or omission of

the defendants:

a.  cannot be located upon the exercise of due diligence;

b.  has been transferred or sold to, or deposited with, a third party;

c.  has been placed beyond the jurisdiction of the court;

d.  has been substantially diminished in value; or;

e.  has been commingled with other property which cannot be divided without

    difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant

to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States

Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).


ROSA E. RODRIGUEZ VELEZ                    TRUE BILL
UNITED STATES ATTORNEY

Jose Ruiz Santiago                         FOREPERSON
Assistant U.S. Attorney                    Dated:   12-02-2015
Chief, Criminal Division

Timothy Henwood                            Jose Capo-Iriarte
First Assistant U.S. Attorney              Assistant U.S. Attorney
                                           Chief, Financial Fraud and Corruption Unit